

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

| | | |
|---|---|---|
| **MARY LYTLE, Personally and as Guardian,** | § | |
| **of SARAH NEALON, a Minor,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 9:04-CV-228 (TH)** |
| | § | **JURY** |
| **ASPEN EDUCATION GROUP and,** | § | |
| **LONE STAR EXPEDITIONS, INC.** | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendants' *Motions to Dismiss* [Docs. #14, #15, and #16] and all responsive papers.  After considering the pleadings, the record, and the arguments of counsel, the Court is of the opinion that Defendant's *Motion to Dismiss for Lack of Subject Matter Jurisdiction* [Doc. #15] is meritorious and should be GRANTED.  Because this *Motion to Dismiss* is dispositive, Defendant's other *Motions to Dismiss* [Docs. #14 and #16] are not considered.

## BACKGROUND

This is a tort lawsuit arising from a student's attendance at an outdoor therapy camp near Groveton, Texas.  It is brought pursuant to the Court's diversity jurisdiction.

Plaintiff Mary Lytle, personally and as guardian for her daughter Sarah Nealon, sues Defendants Aspen Education Group ("Aspen") and Lone Star Expeditions, Inc. ("Lone Star") for negligence, gross negligence, malice, intentional infliction of emotional distress, and false imprisonment.  Aspen and Lone Star challenge this action for lack of personal jurisdiction over Aspen, lack of diversity jurisdiction, and failure to join an indispensable party.

Plaintiffs are both Texas residents.  Lone Star, a wholly owned subsidiary of Aspen, is incorporated in Delaware and runs the wilderness camp at the heart of this lawsuit. Aspen operates numerous camps and treatment facilities throughout the United States.  Aspen is incorporated in California.

# ANALYSIS

## *Lack of Subject Matter Jurisdiction*

Aspen and Lone Star maintain that the Court lacks diversity jurisdiction because Lone Star's principal place of business is in Texas, making it a Texas resident.  Plaintiffs contend that Lone Star's principal place of business is in California and that diversity jurisdiction is proper.  For the reasons articulated below, Aspen and Lone Star's Motion is hereby GRANTED.

For diversity purposes, a corporation qualifies as a citizen "of any State by which it has been incorporated and the State where it has its principal place of business."  28 U.S.C. § 1332(c).  Even the most complex corporations that conduct business in numerous states have only one principal place of business for § 1332(c).  *See J.A. Olson Co. v. City of Winona, Mississippi*, 818 F.2d 401, 406 (5th Cir. 1987).  The Court must determine Lone Star's principal place of business by using the Fifth Circuit's "total activity" test.  *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 876 (5th Cir. 2004).

The total activity test involves two focal points: the location of a corporation's "nerve center" and its "place of activities."  *Id.* , (citing *J.A. Olson*, 818 F.2d at 406).  The totality of the facts must be examined, including the corporation's organization and the nature of its activities, and a court must determine which one of these focal points predominates.  *Id.*   Generally, "when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business . . ., when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant . . ., but when the activity of a corporation is passive and the 'brain' of the corporation is in another state, the situs of the corporation's 'brain' is given greater significance . . . ."  *Id.*, (citing *J.A. Olson*, 818 F.2d at 411).

The critical requirement for the Court in determining Lone Star's principal place of business, then, is to analyze Lone Star's activities and structure.  If they are "far flung," the nerve center test must be used.  *J.A. Olson*, 818 F.2d at 407.  If Lone Star has its sole operation in one state and its executive offices in another, the Court must use the "place of activity" test.  *Id* at 408.  If Lone Star's business activity is merely "passive," then the location of its corporate headquarters or "brain" controls.  *Id.* at 411.

A corporation is involved in "far flung" activities if it has various operations which are carried on in different states.  *Teal Energy*, 369 F.3d at 877 (citing *J.A. Olson*, 818 F.2d at 407).  Additionally, far-flung activities contemplate a corporation with central offices that "radiate out" the company's direction and control to its "constituent parts."  *J.A. Olson*, 818 F.2d at 407.  The nerve center test is appropriate when a corporation engages in far-flung activities because the entity is "so dispersed that no single place in which the corporation conducts its operations can be characterized as "principal."  Id.

2

As stated previously, the factual requirements for the "place of activity" test are simple:  a corporation with executive offices in one state and physical operations in another.  *See Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F.Supp. 405, 412 (N.D. Cal. 1970)(quoting 1 Moore's Federal Practice, 717.77 ¶ 0.77[3.-4])[1].  Thus, when a Delaware corporation with a principal office in New York ran a hotel in California, the hotel's location in California was considered decisive.  *Id.*  Similarly, when a corporation had its headquarters in New York and its only operation was a pipe plant in Alabama, Alabama was the principal place of business because any "control exercised by the New York office" was simply "intracorporate in nature."  *Anniston Soil Pipe Co. v. Central Foundry Co.*, 216 F.Supp 473 (N.D. Ala. 1963), *aff'd* 329 F.2d 313 (5th Cir. 1964).  Finally, when an Illinois corporation had its executive offices in Chicago and its sole manufacturing plant and storage facility in Mississippi, Mississippi was determined to be the principal place of business.  *J.A. Olson*, 818 F.2d 413.

Location of a corporate "brain" controls when a corporation's activities are passive.  *Id.* at 411.  What are passive activities?  The Fifth Circuit has held that passive activities involve investment decisions.  *Village Fair Shopping Center v. Sam Broadhead Trust*, 588 F.2d 431, 434 (5th Cir. 1979).  In *Village Fair*, a Delaware corporation had its only office in New York.  The company's only business consisted of real estate investments in California and Mississippi and commercial paper investments in New York.  The *Village Fair* court found the principal place of business to be the company's New York office, because its investment-only activity in California and Mississippi was not frequent and did not occupy much of the company's time.  *Id.*

Lone Star's sole activity is providing assessment and intervention for students that are struggling in their homes [Doc. #15-2, p. 11].  Lone Star attempts to accomplish this by running an outdoor education program in a single location: 1728 Forest Road 5101, Groveton, Texas, 75845 [Doc. #15-2, p. 5].  Lone Star does not operate any other programs in any other state [Doc. #15-2, p. 3].  Lone Star is required to be licensed and regulated by the Texas Department of Protective and Regulatory Services [Doc. #15-2, p. 7].  The employees of Lone Star are Texas residents [Doc. #15-2, p. 3] and report to work only at Lone Star's facility near Groveton [Doc. #15-2, p. 3].  Students must travel to Texas to receive treatment at Lone Star's camp [Doc. #15-2, p. 11].  The decision regarding whether a student will be admitted to Lone Star or not is made in Texas [Doc. #15-2, p. 16].  To recruit employees, Lone Star advertises in the Houston Chronicle, the Lufkin Daily News, and participates in job fairs at Stephen F. Austin State University in Nacogdoches [Doc. #15-2, p. 17].

Lone Star is headquartered in Cerritos, California [Doc. #20-4].  Elliot Sainer ("Sainer") and Kyle Wescoat ("Wescoat") are Lone Star's corporate officers and directors [Doc. #19-2, p. 8].  They both live and work in California [Doc. #19-2, p. 10].  Lone Star's Executive Director is Mike Ervin

---

[1]The Fifth Circuit has referred to *Lurie Co. v. Loew's* as "a classic case, cited often by the commentaries."  *J.A. Olson*, 818 F.2d at 409.

("Ervin") [Doc. 19-2, p. 10].  Ervin lives in Texas and work's at Lone Star's camp in Texas [Doc. #19-2, p. 10].   Lone Star's board meetings are conducted in California [Doc. #19-2, p. 9].  Lone Star deposits its customer payments in a California bank account [Doc. #19-2, p. 8].  Lone Star maintains employee payroll records in Texas but sends copies to California for processing and payment [Doc. #19-2, p. 19].  A number of personnel from Lone Star's parent corporation, Aspen, provide financial, regulatory, human resources, marketing, and managerial oversight of Lone Star [Doc. 19-2, p. 10-14].  However, none of these personnel are officers, directors, or employees of Lone Star.

After considering the totality of circumstances surrounding Lone Star's activities and its corporate structure, the Court is confident that the "place of activity" test is the appropriate focal point for analyzing Lone Star's principal place of business.  *See J.A. Olson*, 818 F.2d at 413.  Lone Star's operations are not passive, it has a headquarters in California, and its only operational location is in Texas.  "[T]he *place* of operations of a corporation that carries on a single activity is more significant than one of many *places* of operations of a corporation with diffuse activities."  *Id.* at 411.  Additionally, Lone Star's entire existence revolves around treating students, and these students are treated in only one place: Lone Star's camp near Groveton, Texas.  Indeed, all of Lone Star's corporate income comes from the operation of this single camp in Texas.  When considering the total activity of Lone Star, the balance of factors forcefully shows that Lone Star's principal place of business is in Texas.

In their jurisdictional briefing, Plaintiffs intertwined numerous Aspen operational facts with those relevant to Lone Star.  However, "the alter ego doctrine may not be used to create diversity jurisdiction by ignoring the principal place of business of a subsidiary corporation and imputing to it the principal place of business of the parent."  *Id.* at 414.

Lone Star's principal place of business is in Groveton, Texas, making it a Texas resident for purposes of diversity jurisdiction.  Since Plaintiffs reside in Texas, complete diversity in this civil action is lacking.  Since no federal question is present, diversity was the only basis for original jurisdiction in this Court.  Under Fed. R. Civ. P. 12(h)(3), the Court is compelled to dismiss this case for lack of subject matter jurisdiction.  A final judgment reflecting this dismissal will be issued fortwith.

4

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's *Motion to Dismiss for Lack of Subject Matter Jurisdiction* [Doc. #15] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is dismissed for lack of subject matter jurisdiction.

The Clerk of Court is **DIRECTED** to close this civil action.

**SO ORDERED**.

**SIGNED** this the **10** day of **November, 2005.**


Thad Heartfield
United States District Judge